**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| **JOHN DOE** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 22-CV-00872-PX** |
| | ) | |
| **THE UNIVERSITY OF MARYLAND,** | ) | |
| **COLLEGE PARK, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

**MOTION TO DISMISS COUNTS III AND IV
AND FOR SUMMARY JUDGMENT AS TO RACHEL SALEM**

Now come the Defendants, Hailey Chaikin and Rachel Salem, by their attorneys, John J. Condliffe, Esq., Debra B. Cruz, Esq., and Levin Gann PA, *pro bono publico*, on referral from the Maryland Coalition Against Sexual Assault, who move to dismiss the Plaintiff, John Doe's, Complaint for violation of the Federal Rules, for Failure to State a Claim Upon Which Relief May be Granted, and for failing to qualify for Supplemental Jurisdiction and in support thereof, state:

*Use of Pseudonym; Violation of F.R.Civ.P. 10*

1.      Plaintiff has, without leave of court, filed his Complaint using the pseudonym "John Doe."  In footnote 1 to his complaint, Doe explains,

> Due to the nature of the allegations in this lawsuit, Doe is proceeding under a pseudonym to protect his privacy and due to a fear of retaliation. To protect the identity of his accuser as well as the co-respondent in the underlying matter, he is identifying her as "Jane Roe" and him as "Jacob Poe," respectively. In using a pseudonym, Doe relies upon the factors set out in *Co. Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014).

Plaintiff plainly erred in not looking beyond *Co. Doe* and reviewing F.R.Civ.P. 5.2 to ascertain what was required of him to not follow F.R.Civ.P. 10 which plainly required that Doe use his real

name.   Before violating the Federal Rules, it is incumbent upon a party and their counsel to ascertain what the procedure may be to avoid a rule.   F.R.Civ.P. 5.2(e) clearly states, "(e) Protective Orders. For good cause, the court may by order in a case: (1) require redaction of additional information."

2.      *James v. Jacobson*, 6 F.3d 233 (4th Cir., 1993) sets out a five-part test which is discussed in great detail in *Doe v. Alger,* 317 F.R.D. 37, 39 (W.D.Va., 2016),

> Whether a plaintiff is allowed to proceed anonymously is a decision committed to the sound discretion of the district court. Id. at 728. To guide this decision, the Fourth Circuit has provided the following five factors:
>
> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

Citing *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir.1993).

3.      While this motion is not the time or place to argue the *James* factors, Defendants note that factors four and five are clearly distinguishable from *Doe v. Alger* and factors one and two are nowhere as strong in this matter as for Plaintiff in *Doe v. Alger*.  Besides the fact that the Court should be asked first, Plaintiff gives no equal thought to the possibility of harm to Defendants if Defendants prevail as they expect.

4.      As a side note, while the undersigned counsel concedes that most *pro hac vice* admissions are routinely granted, one of Plaintiff's counsel appears on the Complaint before being so admitted.

*Summary Judgment for Rachel Salem*

5.      Defendants incorporate by reference all of the allegations of ¶¶ 1-4.

6.      At no time was Rachel Salem in any way involved in the events specified in the Complaint.  The assertions that Ms. Salem was involved are nothing more than wild speculation on the part of Plaintiff and, quite frankly, his many counsel who had a duty to investigate before filing such an inflammatory lawsuit.

7.      On October 14, 2021, Ms. Salem returned to her parent's home in New York due to medical issues.  On October 15, 2021, she saw her primary care physician, Dr. Kathryn Alcarez, who certified that she should not attend school in person due to the medical issues but could attend class remotely.  The physician note was through December 1, 2021.  See Exhibit 1, filed under seal.

8.      As a result, the University permitted her to attend classes remotely and the time frame was extended through the full Fall semester.  See Exhibit 2, Affidavit of Rachel Salem.

9.      Ms. Salem returned to the campus on December 26, 2021 to get some belongings and did not return again until January 19, 2022. See Exhibit 2, Affidavit of Rachel Salem.

10.     While some of the events complained of allegedly occurred after that date, Ms. Salem was not involved. See Exhibit 2, Affidavit of Rachel Salem.


*Dismissal of Count III*

11.     Defendants incorporate by reference all of the allegations of ¶¶ 1-10

12.     That while Defendants Chaikin and Salem categorically deny the allegations of the Complaint, they understand that for purposes of a motion to dismiss pursuant to F.R.Civ.P.

12(b)(6), all well-pled facts and inferences therefrom will be assumed by the court to be true. They

simply note that if and when the time comes, they will contest this case as a conflation of the truth

brought as a SLAPP suit and will seek attorney's fees accordingly.

13.     Defendants accept the elements of defamation as set forth in Plaintiff's Complaint,

to wit:

> 126. Defamation has four elements in Maryland: (1) that the defendant made a defamatory statement to a third person; (2) that the statement was false; (3) that the defendant was legally at fault in making the statement; and (4) that the plaintiff thereby suffered harm.

*See* Sandler & Archibald, Pleadings Causes of Action in Maryland, 6th Ed., MSBA, 2018, § 3.160,

p. 489; *Lindemuth v. McCreer*, 344 Md.App. 343, 356-57, 165 A.3d 544, 552 (2017) and numerous

antecedent cases.

14.     Plaintiff asserts that the case rises to the level of actual malice (¶ 130), though the

correct term of art in defamation cases is constitutional malice. See *Hearst Corp. v. Hughes,* 297

Md. 112, 125, 466 A2d 486, 493 (1983).   Plaintiff is accordingly seeking punitive damages.

15.     Dismissal for failure to state a claim is governed by *Bell Atlantic v. Twombly,* 550

U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009).  As discussed by Senior Judge Richard Bennett for this Court in

*FTC v. Innovative Marketing*, 654 F.Supp.2d 378, 385 (2010):

> The Supreme Court recently modified the standard of review under Rule 12(b)(6) that had prevailed for half a century. In *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) the Court dispensed with the "no set of facts" language in *Conley.* Instead, the Court held that to withstand a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. Under the plausibility standard, while a complaint need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555, 127 S.Ct. 1955. In other words, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.*

In *Iqbal,* the Court expanded upon *Twombly* by explicating the analytical approach to be followed in any Rule 12(b)(6) test to the sufficiency of a complaint. First, reviewing courts are instructed to identify and segregate out the legal conclusions in the complaint, which, unlike the factual allegations, are "not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950. Second, a court must determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1951. The Court advised that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Indeed, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Finally, the Court characterized the analysis as "context-specific" and advised reviewing courts to draw upon "judicial experience and common sense" in making their determination.

16.    The allegations which constitute alleged defamatory conduct are contained in ¶¶

64-67 and 74 of the Complaint:

64. Defendants Salem and Chaikin further expressed their belief that it is "their job" to let students know "who the predators are on campus."

65. In performing their so-called "job," Defendants Salem and Chaikin undertook a campaign against John Doe to ruin his life at the University.

66. Defendants Salem and Chaikin falsely told additional student organizations at the University, of which Doe is a member, that Doe was a "rapist" and was "under investigation by the University" for sexual misconduct.

67. Over the course of the next several months, Defendants Salem and Chaikin repeated these false allegations to various students and student organizations, telling them not to associate with Doe.

74. Specifically, on October 7, 2021, a student organization's activity that Doe had planned on participating was canceled after Defendants Salem and Chaikin contacted the student organization and stated that Doe was under investigation, despite being fully exonerated a month prior.

The allegations are vague, without the slightest specificity and give Defendant Salem and Chaikin

zero information.  The Complaint is devoid a single allegation of what was actually said to which

person and, if applicable, which organization.  By way of example, ¶ 74 refers only to a "student

organization" and a statement that Plaintiff was "under investigation."  Borrowing from Gertrude

Stein, "There is no there there."[1]


*Dismissal of Count IV*

17.    The allegations of the Plaintiff do not remotely rise to the level of the tort of

Intentional Infliction of Emotional Distress.  This is true to the point where it is hard to believe

counsel even logged in to Westlaw or cracked open a torts treatise.

18.    The elements of Intentional Infliction of Emotional Distress were first announced

in *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977),

> (1) The conduct must be intentional or reckless;
> (2) The conduct must be extreme and outrageous;
> (3) There must be a causal connection between the wrongful conduct and
> the emotional distress;
> (4) The emotional distress must be severe.

The elements have most recently been restated in *Haines v. Vogel*, 250 Md.App. 209, 229, 249

A.3d 151, 162-163 (2021), a case with vastly more serious allegations lost on a Motion to Dismiss

in which the undersigned represented the losing party.

19.    Courts plays an essential gatekeeper role in Intentional Infliction of Emotional

Distress torts.  Most cases fail as a matter of law on the fourth element in terms of the required

severity of emotional distress.  It is a case decided by Senior Judge Catherine Blake, speaking for

this Court, which is the leading case on the subject.  The Court stated,

> Severe distress is that which "'no reasonable man could be expected to
> endure.'"  This threshold is reached when a plaintiff's "emotional distress is so
> severe as to have disrupted her ability to function on a daily basis."  While Ms.
> Takacs alleges debilitating conditions, including "severe depression, anxiety,
> sleeplessness, headaches and [being] sick to her stomach," (Compl. ¶ 36), she does
> not allege that she has been unable to function on a daily basis, even if her
> functioning is presumably affected by her psychological and physical distress. Ms.

---

[1] Gertrude Stein, Everybody's Autobiography, 1937.

Takacs also represents that she was able to work after leaving the Winery, further indicating that her daily functioning was adequate. (*See* Compl. ¶¶ 12, 30) (describing her application for unemployment benefits, which are sought by those who are able to work but unable to find employment). Ms. Takacs's claim to have "suffered a severely disabling emotional response" (*id.* at ¶ 36) is a legal conclusion which is not warranted by the other facts pled and does not prevent dismissal of her claim. Therefore, her IIED claim will be dismissed.

*Id.,* at. 652 (internal citations and footnotes omitted).

20.     Plaintiff's complaints of harm are contained in the following paragraphs of his Complaint:

> 73. Consequently, Doe was socially ostracized and ousted from his student organizations, depriving him of educational benefits.
> 74. Specifically, on October 7, 2021, a student organization's activity that Doe had planned on participating was canceled after Defendants Salem and Chaikin contacted the student organization and stated that Doe was under investigation, despite being fully exonerated a month prior.
> 88. As a result of Defendant Salem's and Chaikin's defamation, Doe was removed from the club team. He had been a member of this group since his freshman year.

21.     Defendants Chaikin and Salem note that had Plaintiff made more allegations with specificity even moderately close the actual events, they would also be contending that Count IV fails on first and second elements of this tort. As it stands, those allegations are as vague when applied to Count IV and they are when applied to Count III. There is simply nothing Chaikin and Salem can reasonably respond to. Were an Answer to be filed in his matter, the response to ¶¶ 66, 67 and 74 would be, "Defendants can neither admit nor deny the allegations because of vagueness and/or lack of specificity."

WHEREFORE, Defendants Chaikin and Salem request that they be granted the following relief:

A.     That Plaintiff be compelled to seek the Court's approval for use of a pseudonym in lieu of the requirements of F.R.Civ.P. 10;

B.      That should leave be granted for the use of pseudonyms, that a Complaint complying with F.R.Civ.P. 10 be filed under seal so that Defendants can be certain of the identity of individuals for whom pseudonyms are used;

C.      That summary judgment be granted in favor of Defendant Rachel Salem and against Plaintiff;

D.      That Count III be dismissed with leave to amend as to Defendant Hailey Chaikin only; and that

E.      That Count IV be dismissed with prejudice as to both Defendants Hailey Chaikin and Rachel Salem.

*John J. Condliffe*

_____
John J. Condliffe, Esq.
Levin & Gann, P.A.
1 West Pennsylvania Avenue, Suite 900
Towson, MD 21204
410-321-4659
jcondliffe@levingann.com
Federal Bar No. 09010