IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN DOE, *
*Plaintiff*, *

v. * No. 8:22-cv-00872-PX

UNIVERSITY OF MARYLAND, *
COLLEGE PARK, et al.,
*Defendants*. *

* * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE**

Pursuant to Federal Rules of Evidence 401, 402, and 403, Defendant, the University of Maryland, College Park ("the University"), moves to exclude four types of evidence.

## I. BACKGROUND

Plaintiff, John Doe ("Doe" or "Plaintiff"), a former student at the University, filed a lawsuit against the University, University employees, and fellow students. Following the dismissal of the fellow students and the Court's ruling on the University's motion for summary judgment, only one count remains pending in the case: Plaintiff's Title IX deliberate indifference claim against the University arising out of the University's response to the second internal complaint (out of three) that Plaintiff filed against other students.

In October 2020, Doe was accused by a fellow student, Jane Roe, of sexually assaulting her, and he participated in a Title IX proceeding at the University, which included an investigation and a hearing. At the conclusion of the Title IX proceeding, Doe was found not responsible for any of Roe's allegations against him. Thereafter, starting around October 2021, Doe alleges that Roe and two fellow students, Defendants Two and Three (who were not parties in the Title IX proceeding), continued to accuse Doe of sexual assault and rape, and they spread rumors to that

effect to some of Doe's acquaintances, including members of the club lacrosse team. Doe ultimately made three formal complaints to the University's Title IX office against Roe and Defendants Two and Three stemming from their accusations, as well as other incidents. He alleged that, as a result of the rumors, he was excluded and ultimately removed from the club lacrosse team.

The only remaining claim in this case concerns the University's response to Doe's February 10, 2022, complaint (his second complaint), in which he reported that Roe and Defendants Two and Three were publicly calling him a "rapist," which led to his removal from the club lacrosse team. (ECF No. 145 at 8-11.) In moving for summary judgment, the University stated that it appropriately dismissed this complaint without investigation because the complaint did not allege sexual harassment. (ECF No. 128-1 at 12-13.) The Court ruled that there was a genuine issue of material fact on this issue – i.e., that a jury could find that the complaint did allege harassment based on Doe's sex and, therefore, the University's dismissal of the complaint was clearly unreasonable. (ECF No. 145 at 15-21.) Because the Court ruled that the University's responses to Doe's first and third complaints cannot support liability under Title IX, the only issues to be decided at trial are whether Doe's second complaint alleged harassment of Doe based on his sex, whether he was deprived of educational benefits, and whether the University acted with deliberate indifference in dismissing the second complaint. (ECF No. 145 at 15-21.)

## II. APPLICABLE RULES OF EVIDENCE

### A. Federal Rules of Evidence 401 and 402: Relevancy

Relevant evidence is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Lorraine v. Market Am. Ins. Co.,* 241 F.R.D.

534, 540 (D. Md. 2007) (stating that the first "evidentiary hurdle to overcome" is to demonstrate that the evidence is relevant as defined by Federal Rule of Evidence 401). "Irrelevant evidence is not admissible." Fed. R. Evid. 402. In determining what evidence is relevant, the Court must first consider what causes of action were brought by Plaintiff and what facts must be proven by the parties to establish their claims and defenses. *See* Fed. R. Evid. 401.

### B. Federal Rule of Evidence 403: Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts have "broad discretion" to exclude evidence under Rule 403. *United States v. Sanders,* 107 F.4th 234, 255 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1434 (2025).

## III. EVIDENCE TO BE EXCLUDED

### A. Title IX Does Not Allow for Recovery for Emotional Distress, Reputational Harm, or Punitive Damages.

Plaintiff's claims for emotional pain or distress, pain and suffering, humiliation, lost self-esteem, reputational harm, and punitive damages are barred because such noneconomic damages are not recoverable under Title IX. In *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Supreme Court held that emotional-distress damages are unavailable in private suits to enforce antidiscrimination provisions enacted under the Spending Clause. 596 U.S. 212 (2022). Finding that Spending Clause antidiscrimination legislation must be viewed through a contract-law lens, the Court held that plaintiffs bringing private causes of action under these laws may only seek statutory damages as well as those damages "traditionally available in suits for breach of contract." *Id*. at 1571 (*quoting Barnes v. Gorman*, 536 U.S. 181, 187 (2002)). Because reputational harm,

emotional distress, and punitive damages are generally not available in contract, they are likewise unavailable under Spending Clause statutes. *See Cummings*, 596 U.S. at 221-22; *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) ("punitive damages are not available for private actions brought to enforce Title IX). While *Cummings* directly addressed only claims arising under the Rehabilitation Act of 1973 and the Affordable Care Act, the Court made clear its reasoning and holding apply equally to claims brought under other Spending Clause statutes, including Title IX. *Id*. at 218 (discussing the concepts underlying Title IX's implied private right of action and referring to "antidiscrimination statutes" collectively).

District courts have uniformly held that the holding in *Cummings* applies to Title IX claims and precludes emotional distress and reputational harm damages. *See, e.g., Doe v. Univ. of Mississippi,* No. 3:18-CV-138-DPJ-ASH, 2024 WL 3011133, at *3 (S.D. Miss. June 14, 2024) (holding that plaintiff "cannot recover under Title IX for non-contractual damages like emotional and mental harms, humiliation, mental anguish, or reputational injuries."); *B.R. v. F.C.S.B.*, 718 F. Supp. 3d 504, 511 (E.D. Va. Feb. 26, 2024) (following *Cummings,* plaintiff's eleven categories of emotional distress damages are barred under Title IX); *Van Overdam v. Texas A&M Univ.*, No. 4:18-CV-02011, 2024 WL 115229, at *3 (S.D. Tex. Jan. 10, 2024) (holding "that the emotional, reputational, and punitive damages sought by Plaintiff are not available post-*Cummings* and *Barnes*"); *Torbett v. E. Carolina Univ*., No. 4:22-CV-00030-M, 2023 WL 6164399, at *6 (E.D.N.C. Sept. 21, 2023) (dismissing plaintiff's Title IX "claims for emotional pain and suffering, indignity, humiliation, embarrassment, inconvenience, and damage to her reputation"); *Doe v. Moravian Coll*., No. 5:20-cv-00377-JMG, 2023 WL 144436, at *7 (E.D. Pa. Jan. 10, 2023) (holding that emotional distress damages are unavailable under Title IX after *Cummings*); *K.G. v. Woodford County. Bd. of Educ*., No. CV 5:18-555-DCR, 2022 WL 17993127, at *3 (E.D. Ky. Dec.

29, 2022) (same); *Unknown Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 17459745, at *4 (D. Ariz. Dec. 6, 2022) (holding "that emotional distress damages and reputational harm damages are both unavailable" under Title IX); *T. F. v. Greenwood ISD,* No. 7:20-CV-215-ADA, 2022 WL 17477597, at *9 (W.D. Tex. Dec. 5, 2022) (acknowledging in light of *Cummings* that "Plaintiffs cannot claim emotional damages under Title IX"); *Doe next friend of Doe v. City of Pawtucket,* 633 F. Supp. 3d 583, 589 (D.R.I. 2022) ("*Cummings* therefore dictates that emotional distress damages are unavailable in private suits to enforce Title IX."); *Doe v. Bd. of Regents of Univ. of Neb.*, 2022 WL 3566990, *4 (D. Neb. Aug. 18, 2022) ("Doe concedes that the holding in *Cummings* generally precludes emotional-distress damages in Title IX cases like hers."); *Doe 1 v. Curators of Univ. of Mo.*, No. 19-cv-04229-NKL, 2022 WL 3366765, at *3 (W.D. Mo. Aug. 15, 2022) ("*Cummings* applies to Plaintiffs' Title IX claims."); *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2022 WL 3279234, at *13 (N.D. Ind. Aug. 11, 2022) ("The Supreme Court's decision [in *Cummings*] forecloses [plaintiff's] claim for 'emotional and psychological damages' . . . ."); *Bonnewitz v. Baylor Univ.*, No. 6:21-cv00491-ADA-DTG, 2022 WL 2688399, at *3 (W.D. Tex. July 12, 2022) ("Damages for emotional distress are not recoverable for violations of anti-discrimination statutes, including Title IX.").

Discovery confirmed that Plaintiff is seeking noneconomic emotional distress and reputational harm damages that are not recoverable under Title IX after *Cummings* and therefore must be excluded. In response to Interrogatory No. 5, Plaintiff expressly claims that he suffered "emotional damages and loss of enjoyment of life" from being excluded from the club lacrosse team and from being "publicly and repeatedly accused of rape," and he also seeks counseling fees "related to this experience." (ECF No. 134, Def.'s Sealed App'x, at A-181.) Likewise, in his deposition, Plaintiff stated that he "couldn't eat," "couldn't sleep," he "lost a bunch of weight," he

"didn't feel safe going out," and he was "labeled a rapist on campus." (ECF No. 140, Pl.'s Sealed App'x, PA-0842, PA-0848.) These descriptions concern emotional distress and reputational injury, and they do not relate to any category of damages recoverable under Title IX.

Because these claimed damages are non-recoverable as a matter of law, evidence and argument concerning Plaintiff's emotional distress, loss of enjoyment of life, humiliation, fear, and reputational harm are irrelevant, have no probative value on any recoverable damages, and would serve only to inflame the jury and unfairly prejudice the University. Any evidence related to emotional distress, reputational harm, or punitive damages should therefore be excluded at trial.

**B. Evidence Relating to Roe's Prior Title IX Complaint Against Doe is Irrelevant and Highly Prejudicial.**

Prior to Plaintiff's complaints to the University that Roe and Defendants Two and Three were sexually harassing him, Plaintiff was the respondent in a Title IX investigation. In paragraphs 14-60 of his Corrected First Amended Complaint, Plaintiff describes an "underlying false report" by Jane Roe and the University's subsequent Title IX investigation and hearing process. (ECF No. 52 ¶¶ 14-60.) On October 27, 2020, Roe filed a formal complaint with the University's Office of Civil Rights and Sexual Misconduct ("OCRSM") against Plaintiff. (ECF No. 52 ¶ 14.) The University investigated Roe's complaint in accordance with OCRSM's policies and procedures, and "[a] hearing took place from August 16, 2021 through August 20, 2021." (ECF No. 52 ¶ 48.) On September 1, 2021, an outside hearing officer found Doe not responsible for sexually assaulting Roe in violation of University policy, and the matter was closed on September 14, 2021. (ECF No. 52 ¶¶ 50-51, 58-59.) Beyond these basic facts, other allegations in Plaintiff's complaint and other evidence related to Roe's Title IX complaint and the subsequent investigation and hearing process are not relevant to Plaintiff's claim that he was sexually harassed and the University was

deliberately indifferent to the harassment. Therefore, such evidence should be excluded under Federal Rules of Evidence 401 and 402.

The issue at trial is whether the University was deliberately indifferent to Plaintiff's complaint to the OCRSM, on February 10, 2022, that Roe and two other female students—Defendants Two and Three—sexually harassed him by calling him a rapist and attempted to have him removed from the club lacrosse team shortly after the University's investigation into Roe's complaint against him was closed. (ECF No. 52 ¶¶ 94, 115.) Therefore, the only relevant aspects of Roe's Title IX complaint against Doe are the basic facts that (1) Roe filed a formal Title IX complaint with OCRSM against Doe (ECF No. 52 ¶ 14) in which she alleged that Doe sexually assaulted her (ECF No. 52 ¶ 16); (2) on September 1, 2021, an outside hearing officer found Doe not responsible (ECF No. 52 ¶¶ 50-51); and (3) the matter was closed on September 14, 2021 (ECF No. 52 ¶ 59). The University does not dispute these facts and agrees to stipulate to them.

All other evidence related to what Plaintiff calls Roe's "underlying false report," including the investigative reports, witness statements, and the hearing officer's decision, are not relevant to whether the University was deliberately indifferent to Plaintiff's complaint that Roe and two other female students began sexually harassing him after September 14, 2021. (*See, e.g.,* ECF No. 52 ¶ 61 ("Shortly after the hearing officer's determination, Jane Roe began to harass . . . Doe.") ¶ 64 ("Over the course of the several months following Doe's exoneration, Defendants Two and Three repeated these false allegations to various students, telling them not to associate with Doe").) Paragraphs 15, 17-49, 52-57, and 60 of Plaintiff's corrected amended complaint allege, among other things, facts about what specific sexual acts Roe alleges were not consensual, Roe's sexual history, that Roe was not credible in her allegations and her statements throughout the investigation and hearing, that Roe's mother engaged in witness intimidation, and details about the outside

hearing officer's written decision. None of that evidence is relevant to Plaintiff's claims in this case and all of it should therefore be excluded during the trial. Plaintiff has no claims related to the adjudication of Roe's complaint against him in this matter (*e.g.,* he does not allege that the University's conduct toward him during the investigation and resolution of Roe's complaint was deliberately indifferent or that he was denied due process during that proceeding). There is no evidence in the record that Defendants Two and Three were involved in the complaint, investigation, or adjudication of Roe's allegations or that they reviewed documents related to it. Therefore, all evidence related to Roe's complaint against Plaintiff and the subsequent investigation and hearing process—except for its existence and the outcome—should be excluded as irrelevant. Fed. R. Evid. 401.

Further, any limited probative value of other evidence about Roe's Title IX sexual misconduct complaint against Plaintiff—beyond the basic facts of its existence and outcome as described above—is outweighed by unfair prejudice to the University and the risks of misleading and confusing the jury. Fed. R. Evid. 403. Introduction of such evidence would also cause undue delay and would waste time on issues not before the jury. *Id*. If Plaintiff introduces evidence about the details of Roe's complaint of discrimination by introducing evidence about the interviews, witness statements, DNA evidence, written reports, hearing, and hearing officer's decision, the University would need to present evidence in rebuttal, resulting in a "mini-trial" on the merits of a collateral issue, which would cause delay, prejudice to the University, and confusion to the jury. *See, e.g., United States v. Custis*, 988 F. 2d 1355, 1359, n.1 (4th Cir. 1993) (warning that allowing a defendant to probe collateral allegations bearing on officer credibility would be "problematic" because any retrial could be derailed by a distracting "mini-trial" on those allegations against the officers); *see also Haskell v. Kamnan Corp*., 743 F. 2d 113, 121 (2d Cir. 1984) (excluding evidence

of the circumstances of other employees' termination to avoid litigating "unnecessary collateral issues"); *Williams v. Lovchik,* No. 1:09-CV-1183-TWP-DML, 2012 WL 2930773, at *2 (S.D. Ind. July 18, 2012) (explaining that, where only retaliation claims remain, limiting references to the underlying discrimination is "sensible" because it prevents a "Pandora's box" of collateral "mini-trials" on abandoned issues that would confuse the jury and unnecessarily prolong the proceedings). Here, evidence about Roe's Title IX sexual misconduct complaint against Plaintiff would create a collateral mini-trial distracting the jury from the only issue at trial: whether the University was deliberately indifferent to sexual harassment when it dismissed Plaintiff's complaint that Roe and two other female students called him a "rapist" after the conclusion of the adjudication of Roe's complaint against Plaintiff.

**C. Evidence Relating to the Incident on May 13, 2022, and Plaintiff's Third Title IX Complaint is Irrelevant.**

Plaintiff alleges that, on May 13, 2022, Roe approached him at a bar in College Park, Maryland and screamed "he raped me." (ECF No. 145 at 11; ECF No. 134, Def.'s Sealed App'x, A-185.) On May 18, 2022, he submitted his third formal complaint to OCRSM, in which he alleged that Roe had violated the no contact order and engaged in retaliation and harassment. (ECF No. 145 at 12.) The University dismissed Doe's complaint. (ECF No. 145 at 20.) The Court determined, in ruling on the University's motion for summary judgment, that "no trier of fact could deem the University's jurisdictional determination" that the conduct occurred off campus and outside of its jurisdiction was clearly unreasonable. (ECF No. 145 at 20.)

That complaint and the University's decision to dismiss it are not relevant to whether the University was deliberately indifferent to Plaintiff's second complaint: that Roe and two other female students sexually harassed him by calling him a "rapist" after the conclusion of the adjudication of Roe's complaint against Plaintiff, leading to his exclusion from the club lacrosse

team during the second semester of his senior year. The incident at issue in the third complaint had nothing to do with the club lacrosse team and did not involve Defendants Two or Three. It occurred after Plaintiff was allegedly deprived of access to the lacrosse team. Plaintiff does not allege that the conduct alleged in the third complaint caused any further deprivation of Plaintiff's access to the University's educational program. The Court specifically found that the University's response to Plaintiff's third complaint was not deliberately indifferent, as a matter of law. (ECF 145 at 20.) Therefore, the Court should exclude argument and evidence about the third complaint and the underlying conduct related to it. *See, e.g., Rodriguez v. Washington Metro. Area Transit Auth.*, No. CV 19-3710 (JEB), 2021 WL 7286936, at *1 (D.D.C. Dec. 7, 2021) (granting motion *in limine* and excluding evidence and argument about dismissed counts).

**D. Evidence Relating to Plaintiff's Claims for Compensatory Damages Should be Excluded.**

Evidence related to Plaintiff's claims for compensatory damages should be excluded because Plaintiff has provided no documentation to support them. The Federal Rules of Civil Procedure require that Plaintiff provide "a computation of each category of damages claimed" and that Plaintiff "must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). In its Interrogatory No. 5, the University specifically requested that Plaintiff "itemize and describe each element of money damages and any other form of relief" he sought in his lawsuit and requested that he "describe in detail the factual basis and method of computation used to determine each such amount, identify all individuals whom [he] contends will support [his] claim for such damages, and identify all documents that support, are relied on, or otherwise relate to such computation." (ECF No. 134, Def.'s Sealed App'x, A-181.) In addition to

his emotional distress damages, addressed above*,* Plaintiff's response stated that he incurred $200 in damages for club lacrosse dues and $11,505 in tuition expenses to the University "for the year in which he was harassed." (ECF No. 134, Def.'s Sealed App'x, A-182.) The University requested "[a]ll documents that relate to or support your claim for damages in this case and the methods used to calculate such damages." Ex. 1, Pl.'s Responses to Defendant's First Requests for Production of Documents, No. 9. Plaintiff answered that "[a]ll responsive documents will be produced." Ex. 1, Pl.'s Responses to Defendant's First Requests for Production of Documents, No. 9. Counsel for the University also asked Plaintiff for more information about those damages during Plaintiff's deposition. Plaintiff could not recall whether the $200 in dues was the total for the year or for a semester. (ECF No. 140, Pl's Sealed App'x, PA-0895.) Plaintiff also testified that he could not recall his grades. He acknowledged that he graduated on time and further testified that the only specific educational opportunity he was unable to access was the club lacrosse team during the second semester of his senior year. (ECF No. 140, Pl.'s Sealed App'x, PA-0847-48, PA-0798-99.)

"Damages computation disclosures are voluntary disclosures, meaning the burden is squarely on the disclosing party to offer the computation." *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 698 F. Supp. 3d 814, 819 (M.D.N.C. 2023). The disclosure "must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computations." *Id.* (internal quotation marks and citation omitted). Plaintiff has failed to provide any documents to support his claims for $200 for club lacrosse dues and $11,505 for tuition expenses. "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Because Plaintiff has failed to

provide any documentary support for his computation of damages, including invoices or proofs of payments, evidence of his compensatory damages should be excluded. *Corrigan Sports Enters., Inc.*, 698 F. Supp. 3d at 819 (excluding defendant's evidence of damages for its counterclaim because defendant failed to disclose its computation of damages during discovery). Plaintiff's failure to produce documents to support his claims for damages is neither justified nor harmless. *Deque Sys. Inc. v. Browserstack, Inc.*, 177 F.4th 585, 595 (4th Cir. 2026). "Allowing the Plaintiff to present evidence on those damages, which have not been tabulated, explained, or supported, would both surprise and prejudice the Defendant." *In re Randolph Hosp., Inc*., No. 20-10247, 2024 WL 2747058, at *5 (Bankr. M.D.N.C. May 17, 2024).

Finally, Plaintiff's claimed tuition damages fail as a matter of fact and logic. He testified that he graduated on time and that the only specific educational opportunity he could not access was the club lacrosse team during the second semester of his senior year. (ECF No. 140, Pl's Sealed App'x, PA-0847, PA-0798-99.) Participation in club lacrosse was separate from, and not included in, his tuition; rather, it required payment of distinct club dues, for which he offered no documentation. (ECF No. 140, Pl's Sealed App'x, PA-0798-99, PA-0895.) Because the club lacrosse team required separate dues not encompassed by tuition, Plaintiff did not pay for that activity through tuition and cannot recover tuition as a proxy for it. Having received the benefit of his tuition payments—academic instruction culminating in an on-time graduation—he suffered no loss of the tuition-paid benefit and is not entitled to a tuition refund. *See, e.g. Mercer v. Duke Univ.*, 181 F. Supp. 2d 525 (M.D.N.C. 2001) (entering judgment on jury verdict for plaintiff on Title IX sex-discrimination claim arising from her treatment as a placekicker on Duke's football team; awarding $1 in compensatory damages and $2 million in punitive damages), *vacated in part and*

*remanded*, 50 F. App'x 643 (4th Cir. 2002) (holding punitive damages unavailable under Title IX; vacating punitive-damages award and vacating/remanding fee award for reconsideration).

## IV. CONCLUSION

The Court should grant the University's motion in limine.

Dated: August 21, 2026

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Sarah A. Marquardt
______________________________
Sarah A. Marquardt, Federal Bar No. 17294
Kathryn J. Bradley, Federal Bar No. 21242
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 17th Floor
Baltimore, Maryland 21202
smarquardt@oag.maryland.gov
kbradley@oag.maryland.gov
(410) 576-6449
(410) 576-6437 (facsimile)

*Attorneys for Defendant University of Maryland, College Park*

## CERTIFICATE OF SERVICE

I certify that, on this 21st day of August, 2026, the foregoing was served by CM/ECF on all registered users.

/s/ Sarah Marquardt
Sarah A. Marquardt