IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF MARYLAND, COLLEGE PARK, *et al.*<br><br>Defendants. | Civil Action No. 8:22-cv-00872-PX |

**JOHN DOE'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION IN LIMINE**

The University of Maryland, College Park ("the University") seeks to exclude four categories of evidence at trial. Plaintiff concedes that emotional distress, reputational harm, and punitive damages are not recoverable under Title IX following *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), and does not oppose exclusion of evidence offered solely to prove those categories of damages. Plaintiff does, however, reserve the right to present evidence of the impact of the harassment to the extent it bears on the elements of his deliberate indifference claim—namely, the severity and pervasiveness of the harassment and his deprivation of educational benefits—as distinguished from non-recoverable emotional damages.

The University's remaining three categories of requested exclusions, however, would improperly strip the jury of evidence essential to evaluate the very issues the Court has identified for trial: whether the harassment was based on Doe's sex,

whether it was severe and pervasive enough to deprive him of educational benefits, and whether the University was deliberately indifferent to his second formal complaint. The motion should be denied as to those three categories.

**ARGUMENT**

"Generally, courts should grant a motion in limine 'only when the evidence is *clearly* inadmissible on all potential grounds.'" *US Wind Inc. v. InterMoor, Inc.*, 640 F. Supp. 3d 390, 404 (D. Md. 2022) (quoting *Dorman v. Anne Arundel Med. Ctr.*, No. 15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018)) (emphasis added). "Generally, relevant evidence is admissible." *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017) (quoting Fed. R. Evid. 402). As the Fourth Circuit has noted, "[r]elevance is an exceptionally low bar." *United States v. Ferguson*, 140 F.4th 538, 544 (4th Cir. 2025). Furthermore, "[w]here evidence is probative, 'the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.'" *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (quoting *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008)). Rule 403 "is a rule of inclusion, generally favoring admissibility." *Id.* (quoting *United States v. Udeozor*, 515 F.3d 260, 264–65 (4th Cir. 2008)). Because Plaintiff's evidence is not *clearly* inadmissible, Defendant's motion should largely be denied.

## I. Evidence relating to emotional distress, reputational harm, or punitive damages.

Consistent with *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), Plaintiff concedes that emotional distress, reputational harm, and punitive

damages are not recoverable under Title IX. Plaintiff does not oppose exclusion of evidence offered solely to prove these categories of damages.

Plaintiff reserves the right, however, to present evidence of the impact of the harassment to the extent it bears on the elements of his deliberate indifference claim—namely, the severity and pervasiveness of the harassment and his deprivation of educational benefits—as distinguished from non-recoverable emotional damages. Evidence that the harassment caused Doe to be removed from the Club Lacrosse team and deprived of educational opportunities and otherwise caused him mental anguish is not solely relevant to "emotional distress" damages. It is also evidence of the very deprivation, and severe or pervasive conduct that forms the basis of his Title IX claim.

## II. Evidence relating to Roe's prior Title IX complaint is relevant and admissible.

### a. The evidence is relevant.

The University asks to exclude all evidence about Roe's prior Title IX complaint except the bare facts that (1) Roe filed a complaint, (2) Doe was found not responsible for sexual assault, and (3) the matter was closed. ECF 163.1 at 6. This sanitized version of events would deprive the jury of essential context needed to evaluate the elements of Plaintiff's deliberate indifference claim.

First, the evidence is relevant to whether the harassment was on the basis of sex. At summary judgment, the Court found that "persistent public pronouncements that Doe is a 'rapist,' a 'sexual predator' and 'dangerous to girls on campus,' is language aimed at his sex and his sexual conduct." ECF No. 145 at 15. The jury needs

context about what Roe actually alleged and the outcome of the investigation to understand why the subsequent campaign—by Roe and PSA—to brand Doe a "rapist" was sex-based harassment. An understanding of the underlying—and completely unfounded—allegations that gave rise to the harassment campaign from Roe and PSA provides the jury with context as to why Roe and PSA targeted him. PSA targeted males who it viewed "had been wrongly exonerated." ECF 145 at 16. A showing that Plaintiff was, in fact, *rightly* exonerated, yet PSA still targeted him solely because he is a male who was wrongly accused, is directly relevant.

Second, the evidence is relevant to the severity and pervasiveness. The Supreme Court requires that harassment be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). The jury must understand the full context of the campaign to evaluate whether it meets this standard. The fact that PSA and Roe were leveraging debunked allegations of sexual assault—not merely generic name-calling—goes directly to severity. A campaign branding someone a "rapist" after a formal adjudicator found no responsibility, and after evidence strongly contradicted the accuser's claims, is qualitatively different from—and far more severe than—mere insults.

Third, the evidence is relevant to the University's deliberate indifference. The jury must understand what the University knew about the underlying complaint and its outcome to assess whether the University's dismissal of Doe's complaints was

"clearly unreasonable." And how the University responded to that underlying complaint is relevant in illustrating how the University responded to Plaintiff's second complaint. This "study in contrasts" is essential to the jury's evaluation of deliberate indifference. *See e.g.,* ECF No. 145 at 21.

**b. Rule 403 does not warrant exclusion.**

The probative value of this evidence is extremely high because it bears on each element the jury must decide. Any "prejudice" to the University from this evidence is not "unfair" within the meaning of Rule 403. It is the natural consequence of the evidence showing that the University knew Doe had been exonerated and still refused to act. As the Fourth Circuit instructs, because the evidence is probative, the Rule should favor inclusion. *See Miller*, 61 F.4th at 429.

The University's concern about a "mini trial" on Roe's complaint is overstated. ECF No. 163.1 at 8. Plaintiff does not intend to relitigate the merits of Roe's sexual assault allegations. Rather, Plaintiff seeks to present evidence of the hearing officer's determination and findings to establish the falsity of the "rapist" label and the sex-based nature of the harassment, as well as the University's unreasonable response. Such presentation can be done efficiently.

The cases the University cites are distinguishable. In *United States v. Custis*, 988 F.2d 1355, 1359 n.1 (4th Cir. 1993), the defendant was prosecuted in a criminal case involving possession of a firearm and cocaine. The "mini trial" language on which the University relies appears in footnote 1. There, the court observed that allowing the defendant to cross-examine police officers about perjury indictments arising from

a completely unrelated criminal case could sidetrack the trial into a distracting mini trial on those unrelated allegations. *Id.* The court emphasized that the perjury indictments "involved an unrelated case, with issues that had no bearing on those at Custis's trial." *Id.* at 1359. That rationale has no application here. Roe's prior Title IX complaint is not unrelated; it is what spawned the harassment campaign against Plaintiff.

In *Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir. 1984), a Second Circuit ADEA case, the court held that the district court erred in not excluding "pattern and practice" testimony from six other discharged employees concerning their own terminations over an 11-year period. The court found the sample statistically insignificant and concluded that it provided "no basis for an inference of discrimination." *Id.* That decision is distinguishable. Plaintiff does not seek to introduce collateral complaints from other students, but evidence about the specific complaint that formed the origin of the harassment. That evidence is tied directly to the alleged misconduct and the University's response, not unrelated grievances.

In *Williams v. Lovchik*, No. 1:09-CV-1183-TWP-DML, 2012 WL 2930773, at *2 (S.D. Ind. July 18, 2012), the plaintiff had claims for retaliation and discrimination. The court dismissed the discrimination case, and all that was left was retaliation. *Id.* The defendant argued against admission of any evidence relating to discrimination because, in a retaliation trial, "all the jury is concerned with is whether there was protected activity—it does not matter for purposes of a retaliation claim whether the matters about which Plaintiff complained are true or not." *Id.* The court agreed with

the defendant, but reserved ruling, requiring the defendant to make certain stipulations before ruling that evidence of discrimination was inadmissible. *Id.* Here, as discussed above, the prior complaint provides support for the elements of Plaintiff's current claim, and is directly relevant.

In sum, each of the University's cited authorities involved evidence that was genuinely collateral to the claims at trial. Here, the opposite is true: the prior complaint is the genesis of the harassment campaign against Plaintiff.

## III. Evidence of the May 13, 2022, incident and third complaint is relevant and admissible.

As discussed, to assess whether the harassment occurred, the jury is required to determine whether the conduct was severe or pervasive. Evidence of the May 2022 incident—where Roe publicly screamed that Doe raped her and encouraged her boyfriend to physically assault him—bears directly on the severity and pervasiveness of the harassment pattern.

Courts routinely consider the full course of conduct, including events before and after the specific incident giving rise to liability, in evaluating whether harassment was severe and pervasive. *See Gordon v. Heath*, 179 F.4th 263, 273 (4th Cir. Jun. 24, 2026) (noting that when evaluating whether conduct is severe or pervasive, courts look at the totality of the circumstances). The May 2022 incident demonstrates that the harassment was continuing to escalate, further evidencing the severe or pervasive nature of the harassment.

Even though the Court ruled that the University's response to the third complaint was not itself clearly unreasonable, the evidence remains relevant to the University's overall pattern of indifference. The Court itself noted at summary judgment that "an argument could be made that the off-campus incident was simply a continuation of her on-campus attacks." ECF No. 145 at 20. The jury should have access to this evidence to draw its own conclusion about the pattern of escalation and the University's failure to intervene. The fact that Roe continued to escalate her harassment while Doe's second complaint sat unanswered is relevant to showing that the University's failure to act on the second complaint was clearly unreasonable—the harassment was continuing and worsening precisely because the University took no action.

The probative value of this evidence is high for the reasons stated above. There is no risk of unfair prejudice to the University. The evidence of Roe's escalating conduct while the University did nothing strengthens Plaintiff's claim—but that is not "unfair" prejudice within the meaning of Rule 403.

## IV. Evidence of compensatory damages should not be excluded.

As the University acknowledges, Plaintiff provided the specific amounts of his damages—$200 in club lacrosse dues and $11,505 in tuition. ECF No. 163.1 at 10–11. The University has known about these claimed damages since discovery. While Plaintiff did not produce supporting invoices or receipts, this does not warrant the extreme sanction of exclusion under Rule 37(c)(1).

Any failure was harmless under Rule 37(c)(1). The amounts at issue are known, specific, and straightforward—$200 and $11,505. The University was not surprised or prejudiced. It knew these amounts, questioned Plaintiff about them at deposition, and specifically asked about the basis for the $200 figure and the tuition amount. Dkt. No. 163.1 at 11.

Courts in the Fourth Circuit consider five factors in assessing harmlessness under Rule 37(c)(1): "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Each factor favors admissibility here.

First, there is no surprise. The University has known the amounts since before discovery concluded. Second, there is no inability to cure. The amounts are simple and verifiable. Third, there is no disruption to trial. These are straightforward figures. Fourth, the evidence is important to Plaintiff's case. Without it, the jury has no basis to award compensatory damages. And fifth, the amounts are those which the University itself charged Plaintiff. Indeed, the University itself has records of what it charged Doe.

The University's argument that tuition damages "fail as a matter of fact and logic" because Plaintiff graduated on time is a merits argument for the jury, not an evidentiary one for a motion in limine. Whether the $11,505 in tuition is

recoverable—*i.e.*, whether Plaintiff received the full benefit of his tuition despite being excluded from Club Lacrosse and otherwise subjected to severe and pervasive harassment that impacted his educational experience—is a damages question for the jury.

The University's reliance on *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 698 F. Supp. 3d 814 (M.D.N.C. 2023), and *In re Randolph Hospital, Inc.*, No. 20-10247, 2024 WL 2747058 (Bankr. M.D.N.C. May 17, 2024), is misplaced. In *Corrigan Sports*, the court excluded the defendant's damages evidence because the defendant never computed its damages at all during discovery—it provided only a "theory of damages" in interrogatory responses, pointed to a 250-page business spreadsheet that "was a business document not created to compute damages for this litigation," and first offered an actual computation in response to the plaintiff's pretrial motion in limine. 698 F. Supp. 3d at 819. Here, by contrast, Plaintiff disclosed specific dollar amounts—$200 and $11,505—in interrogatory responses, the University questioned him about those figures at deposition, and the University is the party itself that charged these fees.

Furthermore, in *In re Randolph Hospital,* the court denied most of the motion to exclude damages evidence, finding the plaintiff's disclosures sufficient where the plaintiff had provided "specific damages amounts" in interrogatories and supplemented them with expert reports and supporting invoices. 2024 WL 2747058, at *3–4. The court excluded evidence only as to one category of damages—lost referrals—where the plaintiff had listed the amount as merely "TBD" in

interrogatories and never provided any computation or evidentiary support whatsoever. *Id.* at *5. That is the context for the passage the University quotes about damages that "have not been tabulated, explained, or supported." *Id.* Doe's situation is the opposite. His damages have been tabulated ($200 and $11,505), explained (club dues and tuition for the year of harassment), and identified to the University since discovery. And the University, by virtue of being the entity that charged these fees, already had access to the supporting documentary evidence. Indeed, *Randolph Hospital* observed that the decisions excluding damages evidence "'involve extreme situations' where there was a 'lack of any supporting evidence,'" and specifically noted that *Corrigan Sports* fell into that category. *Id.* at *5 n.4 (quoting *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003)). Here, such an extreme situation is not present.

Accordingly, the University's motion must fail.

**CONCLUSION**

For the foregoing reasons, the University's motion to limine should be denied with the exception of the limited concession on the availability of emotional, reputational, or punitive damages.

Dated: September 4, 2026

Respectfully submitted,

<u>*/s/ Jason C. Greaves*</u>
Jason C. Greaves, MD Bar No. 2310170002
Jared J. Roberts, *pro hac vice*
BINNALL LAW GROUP, PLLC

717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Counsel for Plaintiff John Doe*

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*
Jason C. Greaves, MD Bar No. 2310170002

*Counsel for Plaintiff John Doe*