IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

JOHN DOE,
Plaintiff,
v. Civil Action No.
THE UNIVERSITY OF 8:22-cv-00872-PX
MARYLAND, COLLEGE PARK,
et al.,
Defendants.

VIDEOTAPED DEPOSITION

WITNESS: GRACE KARMIOL
DATE: Friday, August 16, 2024
START TIME: 10:03 a.m., ET
END TIME: 11:03 a.m., ET
REMOTE LOCATION: Remote Legal platform
PROCEEDINGS OFFICER: Valeria Del Rio, CER-1724
JOB NO.: 27876



A P P E A R A N C E S

BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
By: BEN NORTH, ESQUIRE
ben@binnall.com
Appearing for Plaintiff (PRO HAC VICE)

OFFICE OF THE ATTORNEY GENERAL
HIGHER EDUCATION DIVISION
200 Street Paul Place, 17th Floor
Baltimore, Maryland 21202-2021
By: PATRICK SHERIDAN, ESQUIRE
psheridan@oag.state.md.us
Appearing for Defendants

UNIVERSITY OF MARYLAND
OFFICE OF GENERAL COUNSEL
4716 Pontiac Street
Room 2117 Seneca Building
College Park, Maryland 20742
By: EMILY LEIGH, ESQUIRE
ebolyard@umd.edu
Appearing for Defendants



I N D E X O F T E S T I M O N Y


| EXAMINATION OF GRACE KARMIOL: | PAGE |
|---|---|
| By Mr. North | 7 |




I N D E X O F E X H I B I T S
(available for download)


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| A | Answer of Defendants | 19 |
| B | Corrected First Amended Complaint | 32 |


PLAINTIFF'S EXHIBIT NO. 139
CASE NO.: 8:22-cv-00872-PX
IDENTIFICATION:
ADMITTED:

Page 5

PROCEEDINGS

THE PROCEEDINGS OFFICER: All right. Good morning. We are now on the record. Today's date is August 16th, 2024. The time is approximately 10:03 a.m., Eastern.

My name is Valeria Del Rio. I'm the officer designated by Remote Legal 11 Broadway, Suite 468, New York, New York, to take the record of this proceeding.

This is the deposition of Grace Karmiol, taken in the matter of Doe verses The University of Maryland, et al., Civil Action Number 8:22-cv-00872-PX, filed in the United States District Court, for the District of Maryland.

Would all counsel please identify themselves for the record, and state who they represent, starting with the noticing attorney.

MR. NORTH: Good morning, everyone. My name is Ben North, and I represent the plaintiff, John Doe.

MR. SHERIDAN: Good morning. Patrick Sheridan, Assistant Attorney General. I represent Ms. Karmiol.

THE PROCEEDINGS OFFICER: Thank you.

And will the observer please identify

Page 6

themselves for the record?

MS. LEIGH: Hi. My name is Emily Leigh. And I'm in-house counsel at The University of Maryland.

THE PROCEEDINGS OFFICER: This deposition is being taken remotely on behalf of the plaintiff and is being conducted pursuant to the procedural rules and laws governing this matter.

As such, all parties agree to this means of capturing the official record. Which may include recording by audio, audiovisual, or stenographic means. And agree not to oppose admissibility of the testimony in this proceeding on the basis of the personnel or method by which testimony was captured.

Further, all parties agree that the deposition officer or person administering the oath, may be authorized to administer the oath under the rules where they reside.

Do the parties to stipulate?

MR. NORTH: Yes. I stipulate.

MR. SHERIDAN: Yes.

THE PROCEEDINGS OFFICER: Thank you very much.

Ms. Karmiol, can you please raise your right hand? Please state and spell your name for the record.

Page 7

MS. KARMIOL: Grace Karmiol. K-A-R-M-I-O-L.

THE PROCEEDINGS OFFICER: Do you swear or affirm that the testimony you shall give today in this proceeding will be the truth, the whole truth, and nothing but the truth?

MS. KARMIOL: Yes.

WHEREUPON,

GRACE KARMIOL

having been called as a witness, being duly sworn by the notary public present, testified as follows:

THE PROCEEDINGS OFFICER: Thank you very much.

Counsel, you may begin.

MR. NORTH: Thank you very much.

DIRECT EXAMINATION

BY MR. NORTH:

Q Good morning, Ms. Karmiol.

**A Good morning.**

Q Just before we begin, how do you prefer that I address you during the deposition?

**A Whatever is easiest.**

Q All right. Sounds good. You can just address me as, Ben, if it -- that --

**A Okay. If you want to use my first name,**

Page 8

**that's fine. I know the last name is a little bit tricky.**

Q Sure. Thank you. I appreciate that. Have you ever been to post before?

**A Once before.**

Q Okay. And when was that?

**A Probably 35 years ago.**

Q Okay. So it's been a while.

**A Mm-hmm.**

Q Okay. So let me go over some ground rules for the deposition. It might be familiar to you, but let's just go over them.

**A Okay.**

Q You understand that you're giving testimony and you're under oath. The same oath that you would take in court. Just as no judge here, but it is the same oath to tell the truth under penalty of perjury.

**A Yes.**

Q Do you understand that?

**A Yeah.**

Q Okay. All right. When I ask questions, your counsel may object from time to time. But unless your attorney instructs you not to answer, you still have to answer the question. Okay?

**A Okay.**

Page 9

Q All right. I'm sure during the deposition, I'm going to ask some poorly worded questions. If you ever need clarification on any of my questions, or need me to rephrase; just let me know.

**A Okay.**

Q The corollary of that is, if you don't ask me to rephrase, or don't indicate that you don't understand the question; is it fair for me to assume that you do understand the meaning of the question?

**A Yes.**

Q Okay. And I know it's kind of -- it can be difficult in kind of organic, human conversation; but when you do answer, it's important to give, kind of verbal answers instead of, you know, nodding your head, shaking your head, or giving, you know, mm-hmm, kind of answers. Just so the record's clear. Sound good?

**A Okay. Yes.**

Q Okay. And finally, I will try my best not to interrupt your answers, and please try your best not to interrupt my questions. Again, it happens kind of unintentionally all the time. But I'll try --

**A Yeah.**

Q Okay. All right. You said you were deposed 35 years ago --

**A Excuse me?**

Page 10

Q Sure. You said you were deposed 35 years ago. What -- what was the case about in which you were deposed?

**A I was litigating 35 years ago for the EEOC. I'm an attorney by training. And there was a case in which I was listed as a witness.**

Q Okay. Did that case have to do with sexual harassment or sex discrimination?

**A No.**

Q Okay. Have you prepared for the deposition today?

**A I have.**

Q And how did you prepare?

**A I read over the answer that the University filed.**

Q Okay. And you reviewed that answer before it was filed; is that correct?

**A Yes.**

Q Okay. Do you have any documents in front of you today?

**A No.**

Q Did you -- without telling me what you discussed, if at all -- did you meet with your attorney before being deposed today?

**A Yes.**

Page 11

Q Okay. And how long did you meet with your attorney for?

**A Two hours.**

Q Okay. Is there anything that would prevent you from giving truthful testimony today?

**A No.**

Q Are you under the influence of any drugs or alcohol that would affect your ability to testify truthfully?

**A No.**

Q Okay. You said you're an attorney by trade, do you have a Juris Doctorate?

**A I do.**

Q Okay. And when did you earn that degree?

**A In 1986.**

Q And when were you first admitted to the bar?

**A 19 -- either 1986 or 1987.**

Q Okay. And what bar association was that?

**A Maryland, D.C., Virginia. States and Federal Courts, and the US Supreme Court.**

Q Okay. Is that a complete list of all your bar --

**A Yes.**

Q -- bar memberships. Okay. Do you have any other degrees or any postgraduate degrees other than

Page 12

your Juris Doctorate degree?

**A No.**

Q Okay. And how long have you been an attorney?

**A Since 1986.**

Q Okay. Have you been an active attorney ever since 1986?

**A No. I have served in other capacities, such as Title IX Officer.**

Q Okay.

Q And does Title IX Officer, as you described, does that include Title IX Coordinator?

**A Yes.**

Q You said you were admitted, I believe, in D.C., Maryland and Virginia.

**A Yes.**

Q When was the last time you practiced law?

**A I don't recall.**

Q Was it more than 10 years ago? Just kind of a best guess?

**A No.**

Q Okay. More than five years ago?

**A Yes.**

Q Okay. Now, relevant to this case, you served as Title IX Coordinator at The University of Maryland, College Park, correct?

Page 13

**A Yes.**
Q How did it come about that you served in that role?
**A I saw a job opening, I interviewed for the position, and I received the offer.**
Q And when were you hired as Title IX Coordinator at The University of Maryland?
**A Approximately 2000 -- either '18 or '19. I was there for three and a half years.**
Q Okay. Had you ever served as Title IX Coordinator before your time at The University of Maryland?
**A Yes.**
Q Okay. How many times had you served as Title IX Coordinator at other schools?
**A One other time.**
Q Okay. And where was that?
**A Widener University.**
Q And how long did you serve as Title IX Coordinator at that University?
**A Five years.**
Q Was that directly preceding your service to Title IX Coordinator at The University of Maryland?
**A Yes.**
Q What do you do for work now?

Page 14

**A I'm retired.**
Q Okay. So am I correct in understanding that after you ended your tenure, let's say, as Title IX Coordinator at The University of Maryland; you retired?
**A Yes.**
Q Okay. Do you practice law now?
**A No.**
Q Okay. All right. So I want to talk a little bit about the role of Title IX Coordinator, specifically at The University of Maryland. But I'm sure it's more or less the same at every school. As Title IX Coordinator, is it fair to say that you're the official responsible for the University's Title IX compliance?
**A Yes.**
Q Okay. Does that include the, roughly speaking, the processing and oversights of formal complaints of sexual harassment?
**A Yes.**
Q Okay. And as Title IX Coordinator, am I correct in understanding that you have to follow both the University's policy and federal regulations, if they apply?
**A Yes.**
Q Are you federal regulations regulating the formal grievance process under Title IX?

Page 15

**A Yes.**
Q Okay. Are you familiar with the ones promulgated in 2020?
**A Yes.**
Q Okay. Are you familiar with the ones promulgated in 2024?
**A Yes.**
Q Okay. Are you familiar with the public comment period that preceded the regulations promulgation in 2020?
**A Yes.**
Q Did you submit any public comment with respect to those regulations?
**A No.**
Q Did you submit any public comment with respect to the 2024 regulations?
**A No.**
Q All right. In your role as Title IX Coordinator at The University of Maryland, you regularly had to apply the school's policy and federal regulations. Is that fair to say?
**A Yes.**
Q What is a formal complaint under Title IX?
**A I would have to read the regulation to give the correct definition.**

Page 16

Q Is there a difference between a report of prohibited conduct and a formal complaint?
**A Yes.**
Q What's the difference?
**A A formal complaint is in writing. A report could be in writing or it could not.**
Q Am I correct in understanding that a formal complaint triggers a university's obligation to respond? But a simple report does not?
**A No.**
Q Why do you say, no?
**A It would depend whether it was reported to the institution or the individuals at the institution who are responsible for Title IX.**
Q Okay. Fair enough. Would you agree with me that if a formal complaint is submitted to a Title IX Coordinator at the University, that would trigger the University's response --
**A Yes.**
Q -- under the Title IX grievance process?
**A Yes.**
Q Okay. And kind of similar question. You would agree with me that if a simple report was sent, even to the Title IX Coordinator, that would not necessarily trigger the University's response.

A **The University would respond. It would not likely treat it as a formal complaint.**
Q Okay. I think I understand what you're saying -- is my understanding correct, that a report might trigger a response from the University to issue something like supportive measures. But would not trigger the formal grievance process?
A **Correct.**
Q Okay. And the University would have an obligation, even without a formal complaint, to issue support measures?
A **Yeah.**
Q Right? Okay. When a student files a report - - not a formal complaint -- but a report, can it be unclear whether he or she wants to proceed with the formal grievance process?
A **Yes.**
Q Okay. And what steps have you taken as Title IX Coordinator, when you're unclear whether a student wants to proceed with the formal grievance process?
A **I've had our intake coordinator or an investigator call the potential complainant and ask them.**
Q Have you taken any other steps?
A **It depends on what the report is.**



Q Okay. But sitting here today, just so the record's clear, can you think of any other steps that you've taken, aside from what you just listed?
A **Yes. If it's relevant, I might refer to the - - to a different office. To the Office of Student Conduct or the Threat Assessment Team.**
Q Okay. Are those the only steps that you can remember taking in response to a report of prohibited conduct?
A **And -- and supportive measures.**
Q Okay. Is that the complete list?
A **No.**
Q Can you think of any other steps?
A **I don't recall now.**
Q Okay. When a formal complaint is received by the Title IX Coordinator, what steps, if any, have you taken as Title IX Coordinator?
A **I would give it to our intake employee. Who would then call and make an appointment for an intake interview with either themselves or the investigator.**
Q When you say, the investigator, who do you refer to?
A **It could be one of four investigators that work for the office.**
Q All right. I'd like to talk about the answer



that you've -- your attorney filed, and that we've discussed a little bit already.
MR. NORTH: I'm going to share this exhibit. And I'd like to mark it as Exhibit A.
(Exhibit A marked for identification.)
BY MR. NORTH:
Q Can you see this document?
A **Yes.**
MR. NORTH: Patrick, can you see this document? I haven't heard from Patrick, but I take with that, yes.
THE WITNESS: Patrick, your volume --
THE PROCEEDINGS OFFICER: To let you know, you're muted, Mr. Sheridan.
MR. SHERIDAN: All right. Sorry. Yes.
MR. NORTH: Okay. Great. And just because I'm a little unfamiliar with the software, has this been marked as Exhibit A?
THE PROCEEDINGS OFFICER: Yes. I just marked it.
MR. NORTH: Okay. Great. Thank you.
BY MR. NORTH:
Q Okay. My understanding is that everyone can scroll through the document on your own. Ms. Karmiol, please feel free to read -- read through this document



and whenever you're ready. Can you let me know if this is a true and accurate copy of the answer that you filed?
A **Yes. The document is kind of going on and off the screen. It shows for one minute, and then it stops, and then it goes blank.**
Q Let me -- we've had some technical difficulties at previous depositions. Let me close it out and then reshare it.
A **Okay.**
Q Can you see it?
A **I can see it. I can only go down to the first page.**
Q I think if you continue scrolling down, even though the screen stops, it will go on to the next page. That's how it works for me.
A **Okay. Let's see.**
THE PROCEEDINGS OFFICER: Yes. You can continue scrolling down. Or -- also you have the option that once you hit the bottom of the page. You should see a gray rectangle that says, 1/18.
THE WITNESS: Okay. Got it.
BY MR. NORTH:
Q All right. Are you able to review the whole document now?

Page 21

**A Yeah, I'm scrolling through it.**
Q Sure. Take your time.
**A It's going on and off the screen, so it's not continual.**
Q Let me try to share it one more time here.
**A Yeah. Okay.**
Q Are you able to see it now?
MR. NORTH: I think we might have lost the witness.
THE PROCEEDINGS OFFICER: Yeah.
THE WITNESS: Okay. I had a relog on to the system. It went off.
THE PROCEEDINGS OFFICER: Did that help?
THE WITNESS: Yes. It -- it does go on and off the screen.
MR. NORTH: Madam Reporter, is there -- is there a solution to this problem?
THE PROCEEDINGS OFFICER: Yes. I'm contacting tech about it right now.
THE WITNESS: Okay. When I press the arrow to get the next page, the whole thing goes off the screen and becomes black.
MR. NORTH: Do we want to go off the record here while we figure this out?
THE PROCEEDINGS OFFICER: Yes. It is

Page 22

10:23 a.m. We are now off the record.
(Off the record.)
THE PROCEEDINGS OFFICER: All right. It's 10:32 a.m. We are back on record.
BY MR. NORTH:
Q Okay. I think we have resolved the technical difficulties. Ms. Karmiol, I'll just ask you again. Do you recognize this document as the answer that was filed on your behalf?
**A I do.**
Q Okay. And you reviewed this document before it was filed?
**A Yes.**
Q And as far as you know, all the statements in your answer are true and accurate?
**A Yes.**
Q I'd like to refer you -- I want to ask you some questions about some of the answers you gave in this document. Referring you to Paragraph 81.
**A Okay.**
Q Let me know when you get there.
**A When I scroll down -- try to scroll down to 81. It's doing the same thing, which is kind of reloading. But I am at Paragraph 81.**
Q Can you read Paragraph 81 or is it going in

Page 23

and out?
**A Now, I can read it.**
Q Okay. Okay. Good. All right. Do you see where kind of in the middle of the paragraph there's a sentence that begins: Following a preliminary investigation.
**A No. It's going black and reloading each time I scroll now.**
Q Okay. Let me try what Madam Court Reporter said. And share my screen and see if that works. Let me close this. All right. Are you able to see my screen?
**A I'm able to see it. Can you make the exhibit larger?**
Q I can certainly try.
THE PROCEEDINGS OFFICER: Just to let you know, you can also make the exhibit a bit larger on your end, Ms. Grace.
THE WITNESS: Okay. Now it's off.
THE PROCEEDINGS OFFICER: You can click the diagonal square box in the bottom to make it full screen if you'd like. And if you want to make it partial large screen, you can click the rectangular box that has the arrow coming out of it.
THE WITNESS: Okay. I actually do not

Page 24

have the document up right now.
THE PROCEEDINGS OFFICER: You don't see the exhibit?
THE WITNESS: No.
THE PROCEEDINGS OFFICER: Okay. You should be able to see the exhibit.
THE WITNESS: I don't. Let me -- under Remote Legal. And then it has bars, Microphone, Video, and then it has, Exhibit. Should I click on, Exhibit?
THE PROCEEDINGS OFFICER: Try doing that. But you should be able right now to see it because he's sharing it.
THE WITNESS: Yeah. I can't see it. But let me try clicking on this thing that says, Exhibits. Okay. It's up. It's incredibly small. But -- I -- okay. I'm making it larger. I just can't see you. It went off.
MR. NORTH: Let me stop sharing my screen.
THE PROCEEDINGS OFFICER: Do you have a small laptop screen?
THE WITNESS: It's not that small.
MR. NORTH: Madam Court Reporter, is tech support still on his way, or -- I stepped out. So he may have already come.

Page 25

THE PROCEEDINGS OFFICER: Okay. Yeah. Tech support is still discussing as to what could be the issue. They were fine with the solution that I created -- that I suggested in regards to the share screen, and exhibit thing.

THE WITNESS: Should it be on my screen now? Because I'm not seeing any --

THE PROCEEDINGS OFFICER: No. He closed the exhibit. So you shouldn't be seeing anything right now.

MR. NORTH: Let me try and --

THE PROCEEDINGS OFFICER: Yeah. Try to share the exhibit again, see if it shows.

THE WITNESS: Okay. The first page is showing. It looks like it is showing now.

MR. NORTH: Are you able to scroll to Paragraph 81?

THE PROCEEDINGS OFFICER: If anything, we can try the, bring all to me function.

THE WITNESS: I can see paragraph 81.

THE PROCEEDINGS OFFICER: Mr. North, since you're not doing the share screen, since you're doing the regular exhibit method, let's try doing the, bring all to me function.

MR. NORTH: I'll click that button.

Page 26

THE PROCEEDINGS OFFICER: And see how well that works for her.

THE WITNESS: I can see paragraph 81 clearly.

MR. NORTH: All right. Well --

THE WITNESS: It went off. I'm sorry.

MR. NORTH: Okay.

THE WITNESS: It just keeps going back up to the top of the page.

MR. NORTH: By top of the page, you mean top of the entire document?

THE WITNESS: Yes. Top of the entire document. So I go down to Paragraph 81. And it sits there for a few moments. And then it goes back to the top of the page. Now I'm back at 81 again. I am at Paragraph 81. I can see Paragraph 81.

MR. NORTH: All right. I'm happy to keep -- you know, hopefully we can continue. And we won't continue to have difficulties. If we do continue to have difficulties, I know we were all trying to avoid an in-person deposition. But I think we might have to do that if we continue to have technical difficulties.

THE WITNESS: Yeah. It keeps going back up to the top of the document.

MR. NORTH: All right. Should we go off

Page 27

the record and maybe discuss solutions here?

MR. SHERIDAN: Yeah.

THE PROCEEDINGS OFFICER: Yes. It is 10:40 a.m. We are now off the record.

(Off the record.)

THE PROCEEDINGS OFFICER: It is 10:43 a.m. We are back on the record.

BY MR. NORTH:

Q Ms. Karmiol, my understanding is that you can now see Paragraph 81.

**A Yes.**

Q Okay. Do you see in the middle of the paragraph, there's a sentence that begins with: Following a preliminary investigation?

**A Yes.**

Q Okay. What was that preliminary investigation that you referenced in this paragraph?

**A A preliminary investigation is one in which we have an investigator review the allegations and come. And then they would forward it to the assistant director or to me. And let me know that they do not believe that it meets the definitions of a Title IX violation.**

Q In this particular preliminary investigation, what steps were taken?

**A I believe it was the same as any other**

Page 28

**particularly preliminary investigation, it would have gone to an investigator to review the complaint.**

Q Do you recall which investigator?

**A No.**

Q When you say, it goes to an investigator to review the complaint, what does the investigator do in the process of reviewing the complaint?

**A They would look at the definitions it listed in the policy, and apply them to the allegations that are made.**

Q Okay. And to the best of your knowledge, is it fair to say, that that's what you meant by preliminary investigation when you wrote that in this paragraph, in your answer?

**A A preliminary investigation --**

MR. SHERIDAN: Hold on. I'm going to object to the extent that you're suggesting that she drafted the answer. Ms. Karmiol did not draft the answer. It was drafted by counsel. And so that's the language of the answer, is not her language.

MR. NORTH: Fair enough.

BY MR. NORTH:

Q But, Ms. Karmiol, you reviewed this language as you did with your entire answer before it was filed, correct?

Page 29

**A Yes.**
Q Okay. So the steps that we've just discussed in, to the best of your understanding, that's what is meant by preliminary investigation in this paragraph?
**A Yes. The allegations are examined, they're applied to the policy definitions, and it's determined whether an investigation would go forward or not.**
Q Okay. And am I correct in understanding that that's kind of based on the face of the -- of the formal complaint that's filed?
**A Yes.**
Q All right. Now I'm going to scroll to Paragraph 84. Can you see me scrolling?
**A Yes.**
Q Okay. All right. Can you read Paragraph 84?
**A Yes.**
Q Okay. I want to ask you some questions about this paragraph. You admit in this paragraph that you spoke with Mr. Doe's attorney, is that Lindsay McKasson that you spoke to?
**A Yes.**
Q Okay. Can you tell me what occurred during that conversation?
**A Yes. She asked if I could talk to the individuals that make up preventing sexual assault**

Page 30

**committee, or PSA, and have them stop using the defendant's name or, I'm sorry, the respondent's name.**
Q Okay. And just so we're clear, when you refer to respondent, are you referring to [redacted]?
**A Yes.**
Q Okay. And he wasn't at this -- at this point in time, December 14th, 2021, he was no longer a respondent, correct?
**A Correct.**
Q He was, in fact, alleging that he was the victim of harassment and retaliation. Is that fair to say?
**A Correct.**
Q Okay. So in that sense, he was more of a complainant. Would you agree with that?
**A Yes.**
Q Okay. You say in this paragraph that you deny that you stated that you would instruct PSA to cease and desist harassing Doe. What is the basis, factually, for that denial?
**A I spoke with Ms. McKasson. She asked if I would speak with PSA, which is a group on campus not associated with the Title IX Office. And I told her I was uncomfortable doing it. And speaking to students and telling them not to -- not to move forward or**

Page 31

**publish anyone's name. I asked her if I could use the -- the potential complainant's name.**
Q Did you ever tell Lindsay that you would take any steps to contact PSA with respect to [redacted]?
**A I told her I didn't think it was appropriate.**
Q Okay. But did you ever tell Lindsey that you would contact them with respect to [redacted]?
**A No.**
Q All right. Referring your attention to Paragraph 88. Can you see Paragraph 88?
**A Yes.**
Q Okay. It just reads: Denied. Sitting here today, are you familiar with what the factual basis of that denial is?
**A Yes.**
Q Okay. What is the basis for that denial?
**A Well, I don't see the question for Number 88. I just see deny.**
Q All right. That was kind of my purpose in asking that sloppy question. Would you like me to pull up the corrected amended complaints so you can review Paragraph 88 in that document?
**A Yes.**
MR. NORTH: All right. Let me do that. All right, I suppose I will mark -- let me upload the

Page 32

complaint, and then I'll mark that as Exhibit B. But then I'll share my screen.
(Exhibit B marked for identification.)
THE WITNESS: When you did that, it took me off and out of the deposition. I had to sign back in.
BY MR. NORTH:
Q Okay. Well, let me -- let's see if we can continue pressing ahead. I'll share the complaint, and if you have to log out and log back in, hopefully that will not cause too much of a disruption. See if we can power through. All right. I'd like to mark this as Exhibit B.
Ms. Karmiol, if you can flip through this on this screen, that would be great, but if not, just let me know and I can share my screen.
A Okay. Okay. What paragraph would you like me to look at?
Q 88, please.
THE PROCEEDINGS OFFICER: Exhibit B marked.
MR. NORTH: Thank you.
THE WITNESS: I'm still -- I'm scrolling down.
MR. NORTH:

Page 33

Q Take your time.

**A No. It's not working. It just goes back to the top of the whole page.**

Q When I scroll down, I'll try sharing my screen again. So I'll close the exhibit in the Remote Legal platform. And then I'll share my screen. And let's see if that works. Can you see my screen?

**A I can.**

Q Okay. Are you able to read Paragraph 88?

**A Yes.**

Q Okay. Please let me know when you've read an understood paragraph.

**A No, it just went off. Is that okay?**

Q It's only okay if you know what paragraph 88 says. I don't want you to answer if you don't.

**A Okay. No.**

MR. NORTH: Okay. All right. All right. Patrick, what do you think? I'm thinking at this point it just might be impossible to continue. Yeah.

MR. SHERIDAN: I mean, if this is going to be an ongoing issue, then, you know, we don't want to be here for 14 hours or however long it's going to be, right?

MR. NORTH: Right. Exactly. Yeah.

MR. SHERIDAN: Yeah.

Page 34

MR. NORTH: Are there any objections to doing an in-person deposition. We can ask the court, I think, if we need to push out the end of discovery for this deposition. I think the court would probably be fine with that, given, you know.

MR. SHERIDAN: Yeah. I think they would too. If we can just find a date, I can. Well, do you want to. I mean, do you want to talk about dates right now, or do you want to go back and -- how do you want to handle it?

MR. NORTH: Let's go off the record.

MR. SHERIDAN: Okay.

THE PROCEEDINGS OFFICER: Okay. It is 10:55 a.m. We are now off the record.

(Off the record.)

THE PROCEEDINGS OFFICER: It is 11:02 a.m. We are back on the record.

Mr. North, the certified transcript is included in your order, you would like the transcript to be produced, correct?

MR. NORTH: Yes, please.

THE PROCEEDINGS OFFICER: And Mr. Sheridan, will you be purchasing a copy of the transcript?

MR. SHERIDAN: Yeah. Just e-trans,

Page 35

please.

THE PROCEEDINGS OFFICER: And Ms. Leigh, will you be purchasing a copy?

MS. LEIGH: Nope. No.

THE PROCEEDINGS OFFICER: And will the witness read and sign?

MR. SHERIDAN: Grace? Well, I'll suggest that you read and sign the transcript just because we've had all these technical difficulties. So --

THE WITNESS: Okay.

THE PROCEEDINGS OFFICER: Okay. It is 11:03 a.m.

(Proceedings concluded at 11:03 a.m., ET)

(Read and Sign requested.)

* * * * *

Page 36

CERTIFICATE OF PROCEEDINGS OFFICER

I, Valeria Del Rio, hereby certify:

That the foregoing proceedings were taken before me at the time and place therein set forth;

That the proceedings were recorded by me and thereafter formatted into a full, true, and correct transcript of same;

I further certify that I am neither counsel for nor related to any parties to said action, nor in any way interested in the outcome thereof.

DATED, this 1st day of September 2024.

Valeria Del Rio
CERT #1724
Proceedings Officer

ACKNOWLEDGMENT

I do hereby certify that having been first duly sworn to testify to the truth, I gave the above testimony on August 16, 2024.

I further certify that the foregoing transcript is a true and correct transcript of the testimony given by me at the time and place specified.

______________________________
GRACE KARMIOL

Sworn to before me this ___ day of _______________, 20__

______________________________
Notary Public



ERRATA SHEET

Deponent: GRACE KARMIOL

Deposition Date: Friday, August 16, 2024

| PAGE | LINE | CHANGE FROM/TO | REASON FOR CHANGE |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Under penalties of perjury, I declare that I have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

____________________ ____________

GRACE KARMIOL Date

Sworn to before me this ___ day of _______________, 20__

______________________________

Notary Public